UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GINA G. RIGGI,

       Plaintiff,

   -v-

CHARLIE ROSE INC., *et al.*,

       Defendants.

24-CV-8066 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

  Plaintiff Gina G. Riggi brings claims for hostile work environment under Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, *et seq.*, against Defendants Charlie Rose

Inc., Charles Peete Rose Jr., and Bloomberg L.P. ("Bloomberg").  Before the Court are

Defendants' motions to dismiss or stay the case in light of an ongoing state proceeding between

the same parties involving similar claims.  For the reasons that follow, the motions are denied.

## I. Background

### A. Factual Background

  The following facts are drawn from Riggi's complaint (ECF No. 3 ("Compl.")) and

assumed true for the purposes of resolving the present motions.  *See In re Perry Johnson &*

*Assocs. Med. Transcription Data Sec. Breach Litig.*, Nos. 24-MD-3096, 24-CV-7007, 2025 WL

691904, at *1 (E.D.N.Y. Mar. 3, 2025).

  Riggi is a makeup artist who, beginning in 1995, worked for Defendants on the television

shows *Charlie Rose* and *Charlie Rose: The Week*.  (Compl. ¶¶ 1-2.)  Riggi managed the Charlie

Rose Show's makeup department until 2017, when PBS canceled the program "in response to

widely publicized allegations that Mr. Rose had abused and sexually harassed his female staff,

and other women, for decades." (*Id.* ¶ 3.) Riggi alleges that she experienced a hostile work environment while working for Rose, "based on a pattern of misogynistic, abusive, demeaning, embarrassing, and degrading behavior directed" at both Riggi and other staff, and that the other Defendants knew of and failed to remedy that behavior. (*Id.* ¶¶ 4-6.)

In particular, Riggi alleges that the abuse she experienced occurred in Manhattan—at Bloomberg's studio and Rose's apartment—as well as at Rose's home in Bellport, New York, where she attended at least two pool parties hosted by Rose. (*Id.* ¶¶ 7, 40, 93, 97-98.) Rose would, among other things, verbally abuse Riggi and "swat at her hand" while she tried to comb his hair and adjust his makeup. (*Id.* ¶ 61.) In one instance, he allegedly "forcefully grabbed and twisted her arm, physically hurting her, and stating, 'How does that feel, do you like that?'" (*Id.* ¶ 62.) Riggi alleges also that Rose mistreated other staff "during work-related travel, at hotels, on airplanes, in limousines, at the CBS broadcasting studio, at Mr. Rose's own offices, and elsewhere." (*Id.* ¶ 8.) The alleged abuse comprised groping, hugging, kissing, whispering, staring, and other "inappropriate and unwanted physical contact" and "explicit sexual overtures." (*Id.* ¶ 9.)

### B.    Procedural Background

On September 14, 2018, Riggi filed a charge of discrimination, alleging essentially the same facts as are in her complaint, with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 35.) She did not receive a notice of her right to sue from the EEOC until July 25, 2024. (*Id.* ¶ 36.)

In the meantime, on September 19, 2019, Riggi sued all three defendants in New York State Supreme Court, asserting claims for age and sex discrimination, under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, *et seq.*; unpaid wages, under Article VI of the New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 190-99; and common law

unjust enrichment/quantum meruit.  *See* Complaint at 24-27, *Riggi v. Charlie Rose Inc.* (N.Y. Sup. Ct. N.Y. Cnty. Sept. 19, 2019) (Index No. 159167/2019).  In response to Defendants' motion to dismiss in the state court action, Riggi withdrew her claims for age discrimination and retaliation, partially withdrew her claims under the NYLL, and moved to amend her complaint to add claims for breach of contract and promissory estoppel.  *See* Docket No. 21 at 23-28, *Riggi v. Charlie Rose Inc.* (N.Y. Sup. Ct. N.Y. Cnty. Jan. 24, 2020) (Index No. 159167/2019).  New York Supreme Court Justice Verna L. Saunders dismissed the remaining NYLL and unjust enrichment/quantum meruit claims and denied Riggi's request to amend to add the contract and promissory estoppel claims.  Docket No. 42 at 5, *Riggi v. Charlie Rose Inc.* (N.Y. Sup. Ct. N.Y. Cnty. May 26, 2021) (Index No. 159167/2019).  On June 24, 2021, Riggi filed a notice of appeal to the First Department of the Appellate Division, *see* Docket No. 45, *Charlie Rose Inc.* (N.Y. Sup. Ct. N.Y. Cnty. June 24, 2021) (Index No. 159167/2019), which on January 17, 2023 affirmed Justice Saunders' decision, *Riggi v. Charlie Rose Inc.*, 179 N.Y.S.3d 901, 901-02 (1st Dep't 2023).

All that remains in Riggi's state court action is her NYCHRL claim.  On November 11, 2023, Justice Saunders issued a scheduling order governing the parties' discovery obligations and indicating that some initial discovery demands had already been served.  *See* Docket No. 55, *Riggi v. Charlie Rose Inc.* (N.Y. Sup. Ct. N.Y. Cnty. November 22, 2023) (Index No. 159167/2019).  On December 10, 2024, Justice Saunders issued an order following a compliance conference with the parties setting new discovery deadlines, with Defendants to produce documents in response to outstanding requests by December 20, 2024; Riggi to begin disclosing medical records on December 6, 2024; all fact discovery to conclude by May 30, 2025; and expert discovery to conclude by September 15, 2025.  *See* Docket No. 57, *Riggi v. Charlie Rose*

*Inc.* (N.Y. Sup. Ct. N.Y. Cnty. December 10, 2024) (Index No. 159167/2019).  Defendants

served their first productions of documents in that case on December 20, 2024 and January 10,

2025.  (ECF No. 25 ("Opp.").)

Ninety days after receiving her notice of her right to sue from the EEOC, on October 23,

2024, Riggi commenced her federal action in this Court, asserting claims under Title VII and the

NYSHRL.  (ECF No. 1.)  On January 17, 2025, Defendants moved to dismiss or stay the action

on the basis of the abstention doctrine first elaborated in *Colorado River Water Conservation

District v. United States*, 424 U.S. 800, 817 (1976).  (ECF Nos. 9, 16.)  Defendants Charlie Rose

Inc. and Rose filed a memorandum of law in support of the motion to stay (ECF No. 10

("Mem.")), which Defendant Bloomberg adopted (ECF No. 17.)  On January 31, 2025, Riggi

opposed the motion.  (Opp.)  On February 7, 2025, Defendants Charlie Rose Inc. and Rose filed

a reply memorandum in further support of the motion to stay (ECF No. 26 ("Reply")), which

Defendant Bloomberg again adopted (ECF No. 27).

## II.     Legal Standard

"A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for

lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil

Procedure."  *JPMorgan Case Bank, N.A. v. Avara US Holdings LLC*, No. 23-CV-7145, 2024 WL

709068, at *4 (S.D.NY. Feb. 21, 2024) (quoting *Iacovacci v. Monticciolo*, No. 18-CV-7984,

2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019)).  "In considering such a motion, the Court

generally must accept the material factual allegations in the complaint as true."  *Id.* (citing *J.S. ex

rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).  However, jurisdiction may not

be established "by drawing from the pleadings inferences favorable to the party asserting it."

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

## III.    Discussion

In *Colorado River*, the Supreme Court elaborated "principles . . . which govern in situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts."  424 U.S. at 817.  Those principles dictate that, in one of "a few extraordinary and narrow exceptions," district courts may abstain from exercising federal jurisdiction over a case due to a parallel state court proceeding.  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotation marks omitted).  "Ultimately, the decision of whether to stay or dismiss the federal suit under *Colorado River* abstention lies within the court's discretion."  *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 185 (E.D.N.Y. 2012) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)).

The analysis proceeds in two steps.  First, the district court must determine whether the state and federal actions are indeed "parallel," or in other words, that "substantially the same parties are contemporaneously litigating substantially the same issue in [another] forum[]."  *Id.* at 182 (quoting *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Only if the answer is "yes" may the district court proceed to the second step, which involves the balancing of six factors that are to be "heavily weighted in favor of the exercise of jurisdiction."  *See id.* (quoting *Moses H. Cone*, 460 U.S. at 16); *see also Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) ("Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are 'parallel.'").  Whether the party seeking abstention requests a stay or outright dismissal makes no difference to the analysis.  *See Bethlehem Contracting Co. v. Lehrer/McGovern Inc.*, 800 F.2d 325, 327 n.1 (2d Cir. 1986).

Proceeding under that framework, the Court concludes that although Riggi's state and federal actions are indeed parallel, the *Colorado River* factors do not weigh decisively in favor of abstention.

### A.      Whether the State and Federal Proceedings are Parallel

"Federal and state proceedings are 'parallel' for abstention purposes 'when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Abe v. N.Y.U.*, No. 14-CV-9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)).  Though "perfect symmetry of parties and issues is not required," "if the court has any doubt regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction." *Dalzell Mgmt.*, 923 F. Supp. 2d at 597 (cleaned up). The critical inquiry is whether "there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (quoting *In re Comverse Tech., Inc.*, 06-CV-1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)).  No one disputes that, between the state and federal actions, there is an identity of parties and relief sought.  (*See* Mem. at 7-8; Opp. at 11-13.)  Instead, Riggi argues that the actions are not parallel because the NYCHRL claims (in the state proceeding) and the NYSHRL and Title VII claims (in the federal proceeding) "require application of different analytical standards."  (Opp. at 12.)  To support that explanation, Riggi offers two distinctions among the various claims at issue.

First, Riggi argues that the evidence relevant to her state court NYCHRL claim may be more limited than that which is relevant to her federal court NYSHRL and Title VII claims.  That is because the NYCHRL permits an employee to challenge only conduct that occurred while they worked in New York City or which had an impact on them here.  (*See* Opp. at 12 (citing

*Hoffman v. Parade Prods.*, 15 N.Y.3d 285, 289 (2010)).)  But as Defendants point out, the overwhelming share of the evidence in both cases concerns conduct alleged to have occurred in New York City, save for alleged conduct at two pool parties at Rose's home in Bellport.  (*See* Reply at 7-8.)  Moreover, the notion that the state court will conclude that such evidence had no impact on Riggi inside New York City is entirely speculative.  And even if that did happen, parallelism does not require that any resolution in the state proceeding necessarily resolve this case, but only that there be a "substantial likelihood" of that result.  That it is possible the NYCHRL claim may be decided against Riggi based exclusively on evidence of New York City conduct, and that the inclusion of the non-New York City evidence would make the difference here, is too fine a distinction to render the actions non-parallel.  Put otherwise, "the factual and legal showings required for [Riggi] to prevail on [her] claims in federal court are substantially the same" as those required in state court.  *Harman v. Moss & Moss LLP*, No. 23-CV-10614, 2024 WL 5202549, at *4 (S.D.N.Y. Dec. 23, 2024) (citing, among other cases, *Abe*, 2016 WL 1275661, at *6).

Second, Riggi argues that the three claims at issue involve different legal standards that she suggests may prevent a judgment in either action from precluding litigation in the other.  (*See* Opp. at 12-13.)  Specifically, she cites the "different analytical standards, not only for the substantive hostile work environment claims, but for other issues which may arise in the litigation, including joint employer status, coverage of independent contractors, and liability for Mr. Rose as an employer or individual."  (*Id.* at 12.)  But a closer analysis reveals far more similarity than difference.  For example, though the federal and NYCHRL hostile work environment standards differ, a plaintiff who loses on the merits of the latter claim cannot prevail on the former, *see Moazzaz v. MetLife, Inc*, No. 19-CV-10531, 2021 WL 827648, at *8

(S.D.N.Y. Mar. 4, 2021).  And if Riggi succeeds in state court, that will likely be issue preclusive as to many of the facts underlying her hostile work environment claim and also likely prevent her recovery in federal court, *see Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be compensated only once.  If two causes of action provide a legal theory for compensating one injury, only one recovery may be obtained.").  That difference does little to undermine the actions' parallelism.  *See, again*, *Abe*, 2016 WL 1275661, at *6 (finding "substantial overlap" between the elements of Title VII and NYCHRL claims).

The same goes for the purported differences in threshold considerations of joint employer status, independent contractor status, and Rose's individual liability.  As to joint employer status, the tests for all three claims are identical.  *See Franklin v. Vertex Glob. Sols., Inc.*, No. 20-CV-10495, 2022 WL 392913, at *9 (S.D.N.Y. Feb. 9, 2022) (citing *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020)).  Moreover, whether Riggi is an employee or an independent contractor makes no difference for the NYCHRL claim.  *See Smith v. Calypso Charter Cruises Inc.*, 19-CV-7076, 2021 WL 4084182, at *7 (S.D.N.Y. Sept. 8, 2021) (citing N.Y. Exec. L. § 8-102(5)).  So, as with the differing standards governing hostile work environment claims, either Riggi loses in state court and fares no better here, or wins in state court and cannot recover again here.  That, too, is a distinction without a difference.  Finally, any potential differences in the standards for establishing Rose's individual liability do not destroy the actions' fundamental parallelism.  As for Title VII, that statute does not provide for individual liability, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1213-17 (2d Cir. 1995), *abrog'd on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and thus does not offer any additional avenue for relief to Riggi in federal court.  And though the NYSHRL's and

NYCHRL's standards for establishing individual liability differ somewhat,[1] they still overlap substantially, especially in light of Defendants' apparent concession that Riggi pleads sufficient connection between Rose and the allegedly discriminatory conduct (if it in fact occurred and rose to an actionable level) to establish individual liability.  (*See* Reply at 10.)  Those substantial similarities, coupled with the likelihood that the threshold issue of individual liability will not be dispositive in either the federal or state action, assures the Court there are no differences in "analytical standards" that render the state and federal actions non-parallel.

In sum, even if "the claims are not exactly the same," they are parallel because they comprise "the same essential issues."  *Garcia v. Tamir*, No. 99-CV-298, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) (citing *Gen. Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988)); *see also Yu v. Gao*, No. 24-CV-3902, 2025 WL 80658, at *3 (E.D.N.Y. Jan. 13, 2025) ("Complete identity of [] claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." (citing *Pappas Harris Cap., LLC v. Bregal Partners, L.P.*, No. 20-CV-6911, 2021 WL 3173429, at *3 (S.D.N.Y. July 27, 2021))).

---

[1] The difference in standards was explained recently by Judge Caproni:

> Individuals can be held liable under both the NYSHRL and the NYCHRL, but the test to determine individual liability differs between state and city law.  Under the NYSHRL, individual liability may be imposed if (1) a defendant has an ownership interest in the employer or, alternatively, has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others.  An individual, however, must actually participate in the conduct giving rise to a discrimination claim.  Although the NYCHRL does not require an ownership interest or the authority to make employment decisions, a plaintiff must still show that the individual actively participated in the discriminatory conduct.

*Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 460-61 (S.D.N.Y. 2024) (cleaned up).  Other than referencing that the difference in standards exist, Riggi does not explain how that difference destroys the "substantial overlap" between the NYSHRL and NYCHRL claims.

B.     The *Colorado River* Factors

"[B]ecause Plaintiff's claims brought under Title VII and [the NYSHRL] in the federal action are parallel to Plaintiff's claims under [the] NYCHRL brought in the state action, the Court turns next to an analysis of the *Colorado River* factors."  *Abe*, 2016 WL 1275661, at *6 (capitalization altered).  Those factors are "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights."  *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted).  The Court considers each factor in turn, "taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise," and mindful that "[o]nly the clearest of justifications will warrant dismissal."  *Moses H. Cone*, 460 U.S. at 15-16.

"The first two factors in the analysis are not applicable to this case," as "[t]here is no res or property involved in either action, and the federal forum . . . is not inconvenient."  *Garcia*, 1999 WL 587902, at *3.  "Thus, the first two factors, although not weighty in this case," counsel against abstention.  *Id.*

The third factor—avoiding piecemeal litigation—is "[b]y far the most important."  *TD Bank, N.A. v. 202-4 W. 23rd St. Corp.*, No. 24-CV-930, 2024 WL 5168360, at *4 (S.D.N.Y. Dec. 19, 2024) (quoting *Moses H. Cone*, 460 U.S. at 16).  It is implicated where "a failure to abstain may result in inconsistent dispositions that would breed additional litigation on assertions of claim and issue preclusion."  *Id.* (cleaned up).  Most problematic are cases that pose "a risk of

inconsistent outcomes not preventable by" ordinary preclusion principles, such as when "all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Woodford*, 239 F.3d at 524.  Defendants contend that this factor "heavily favors abstention here," as the abstention doctrine is chiefly concerned with avoiding the "needless duplication of proceedings and wasting of judicial resources."  (Mem. at 8 (quoting *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 594 (S.D.N.Y. 2006)).  Riggi disagrees, stressing that this factor is implicated only where ordinary preclusion doctrine will not supply an orderly resolution to the parallel cases.  (Opp. at 14.)

Riggi is correct.  Most significantly, "because the two proceedings all involve the same dispute between the same two parties, a decision in one proceeding would generally have preclusive effect in the other, which significantly reduces any concern about piecemeal litigation."  *Yu*, 2025 WL 80658, at *6 (cleaned up).  More specifically, assuming both cases reach the merits, these parallel proceedings have four possible outcomes: Riggi (a) wins first in state court, (b) wins first in federal court, (c) loses first in state court, or (d) loses fist in federal court.  Outcomes (a), (b), and (c) all involve ordinary applications of preclusion.  If Riggi wins first in either forum, she will have been fully compensated, and if she loses first in state court, that loss will preclude her here in light of the elevated standards for establishing liability under Title VII and the NYSHRL.[2]  It is only in outcome (d), if Riggi fails first in federal court, that the parties will need to continue litigating in state court.  The Court notes, first, that that would

---

[2] Though, now, the NYSHRL carries a burden of establishing liability akin to the more lenient NYCHRL, that is the product of an amendment to the NYSHRL passed after Riggi's claims accrued and which is not retroactive.  *See McHenry v. Fox News Network*, 510 F. Supp. 3d 51, 68-69 (S.D.N.Y. 2020).

not raise the possibility of "conflicting" outcomes, as an employment discrimination plaintiff losing on a stringent standard supplied by one sovereign's law but prevailing on a more lenient standard supplied by another's is an ordinary feature of federal litigation.  *See, e.g.*, *Reach v. Healthfirst, Inc.*, No. 23-CV-8085, 2024 WL 4493769, at *6 (S.D.N.Y. Oct. 15, 2024) ("Unlike her federal claims, Reach's allegation of a hostile work environment satisfies the less rigorous standard imposed by the New York City Human Rights Law . . . .").  And even a greater divergence would not strongly counsel in favor of stay or dismissal, as "[t]he mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor."  *Pike Co., Inc. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 388 (W.D.N.Y. 2018) (quoting *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 345 (S.D.N.Y. 2010)).

The primary case on which Defendants rely, *Abe*, concerned a distinctly different situation: where any judgment in the federal action "would not have any preclusive effect on the . . . *individual* defendants in the state action," as they were not named defendants.  *Cf. Abe*, 2016 WL 1275661, at *7 (emphasis and capitalization altered); *see also FaZe Clan Inc. v. Tenney*, 407 F. Supp. 3d 440, 443 (S.D.N.Y. 2019) ("Because the three proceedings all involve the same dispute between the same two parties, a decision in one proceeding would generally have preclusive effect in the other two, which significantly reduces any concern about piecemeal litigation." (citing *Niagara*, 673 F.3d at 101-02)).  And many of Defendants' other cases were decided before some of the Second Circuit's more recent instruction that the primary consideration in avoiding piecemeal litigation is not mere parallelism, but the inability for preclusion doctrine to account for it.  *See, e.g.*, *Niagara*, 673 F.3d at 101; *Woodford*, 239 F.3d at 524.  Here, all Defendants can point to is the "speculative," *FaZe Clan*, 407 F. Supp. 3d at 443,

"risk of duplicative litigation or a rush to judgment," which "weigh only modestly in favor of dismissal," *Pike Co.*, 284 F. Supp. 3d at 389.  Similarly, though Defendants pose a series of rhetorical questions concerning which authority—the state court or this one—will adjudicate discovery disputes, they point to no case law suggesting that the mere prospect of overlapping discovery obligations renders litigation "piecemeal."  To the contrary, that the parties are identical in both proceedings decreases concerns that discovery disputes will need to be adjudicated twice or that the parties will be unable to settle on rules to govern depositions. Confident that the normal application of the preclusion doctrines (coupled with the parties' probable competence in conducting discovery without constant judicial supervision) will ensure an orderly resolution of these two actions, the Court concludes the third factor weighs only modestly in favor of abstention.

The fourth factor concerns the "order of the actions and [their] relative progress."  *Abe*, 2016 WL 1275661, at *8 (capitalization altered).  Where the state proceeding was filed first and has proceeded further than the federal action, that weighs in favor of abstention.  Here, no one contests that the state action was filed first—roughly five years earlier.  (*See* Mem. at 3.) "Where there have been extensive, if inconclusive, proceedings in the original action, including discovery and several interlocutory decisions in the state court, while the federal suit, on the other hand, has not moved beyond the initial pleadings and the motion to dismiss, it hardly seems wise to permit the plaintiff to start anew in federal court."  *JPMorgan Chase*, 2024 WL 709068, at *7 (citing *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985)) (cleaned up).  Though Riggi argues that the state action is at an "early stage" because the previous several years of litigation concerned her claims under the NYLL, and that document discovery has only recently begun there (Opp. at 15-16), she does not dispute that that action was

already the subject of an interlocutory appeal—which she filed—and that there has been the

exchange of thousands of documents, unlike the preliminary stage of this action.  Still, document

discovery can be reproduced, and the progress on the NYCHRL claim has been relatively

nascent.  *See Yu*, 2025 WL 80658, at *6-7 (citing *Iovacci*, 437 F. Supp. 3d at 378); *Niagara*, 673

F.3d at 102 (noting that the fourth factor "will carry little weight if there has been limited

progress in [a first-filed] state court suit" (quotation marks omitted)).  Applying this factor "in a

pragmatic, flexible manner with a view to the realities of the case at hand," *Pike Co.*, 284 F.

Supp. 3d at 390 (quoting *Moses H. Cone*, 460 U.S. at 21), the Court concludes that it weighs

only modestly in favor of abstention.

The fifth factor weighs in favor of abstention when state law, rather than federal law,

supplies the rule of decision in the federal action.  *Niagara*, 673 F.3d at 102.  However, "even

'the *absence* of federal issues does not strongly advise dismissal, unless the state law issues are

novel or particularly complex.'"  *Id.* (quoting *Village of Westfield v. Welch's*, 170 F.3d 116, 123-

24 (2d Cir. 1999)).  Indeed, "federal courts are fully capable" of applying New York law, "a

common situation in this federal District."  *FaZe Clan*, 407 F. Supp. 3d at 444.  Though

Defendants contend that state law supplies the rule of decision in this case because Title VII and

the NYSHRL are "governed by the same standard" (Mem. at 11 (quoting *Summa v. Hofstra

Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013)), it remains that federal law governs every aspect of

the Title VII claim, and the Court is to turn to authoritative sources of federal law—namely, the

Supreme Court and the Second Circuit—in order to apply it.  "[T]he presence of federal-law

issues must always be a major consideration weighing against surrender," *Moses H. Cone*, 460

U.S. at 26, and accordingly, the fifth factor is a strong weight in favor of retaining jurisdiction.

Finally, the sixth factor weighs against abstention "unless the party seeking federal court jurisdiction demonstrates that the state court cannot protect that party's procedural and substantive rights or that the full range of remedies available to the party in this court would be unavailable in the state action." *JPMorgan Chase*, 2024 WL 709068, at *7 (cleaned up). Riggi argues that this factor weighs against abstention because there may be evidence—i.e., the two pool parties—that the state court refuses to consider, or that it may reach a different result in applying the "different standards" governing NYCHRL, NYSHRL, and Title VII claims. (*See* Opp. at 17.) None of those arguments provide a reason to doubt the state court's competence to adjudicate Riggi's NYCHRL claim, however. For that reason, the sixth factor weighs in favor of abstention, though only modestly, as it "is significant only if it militates in favor of federal jurisdiction." *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir. 1987).

Only three factors weigh in favor of abstention, and only modestly so. The threat of piecemeal litigation is mitigated substantially by the ordinary operation of the preclusion doctrines, and though the state action was first-filed, the NYCHRL claim has not progressed passed initial document discovery in that case. Moreover, though the Court does not doubt the state court's ability to protect Riggi's rights, it need not find the opposite in order to maintain jurisdiction. And of the three factors that weigh against abstention, the Supreme Court has called the presence of federal issues in the litigation "a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. Likewise, the absence of concerns about shared jurisdiction over a res and convenience compel against abstention. Because the balancing of the factors must be "heavily weighted in favor of the exercise of jurisdiction," *Niagara*, 673 F.3d at 104 (quoting *Moses H. Cone*, 460 U.S. at 16), the Court concludes that this case does not present extraordinary and narrow circumstances that would warrant abstention under *Colorado River*.

### C.    Whether Vexatious and Reactive Litigation Supports Abstention

Finally, Defendants contend that "the vexatious and reactive nature of this action favors abstention." (Mem. at 11 (capitalization altered).) It is true that, "[i]n addition to the six factors already discussed, some courts considering whether to abstain under *Colorado River* have found that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 28 (cleaned up). However, many courts, including the Second Circuit in at least four cases concerning *Colorado River* abstention, have not raised the issue. *See, e.g.*, *Niagara*, 673 F.3d at 104; *Bethlehem Contracting*, 800 F.2d at 329; *Woodford*, 239 F.3d at 525-26; *Village of Westfield*, 170 F.3d at 124-25. The Court is skeptical that such considerations fit "within the 'narrow and specific limits' prescribed by the [*Colorado River*] abstention doctrine." *Village of Westfield*, 170 F.3d at 125 (quoting *Dittmer*, 146 F.3d at 116). In any event, nothing in the record suggests bad faith or vexatious conduct on Riggi's part. Defendants' gripe that Riggi delayed filing this action until after her appellate loss in the state court action (*see* Mem. at 11-12) ignores that Riggi filed a timely EEOC charge concerning her Title VII claim before even filing her state court action, and she promptly filed this action upon receiving her notice of a right to sue. (*See* Compl. ¶¶ 35-36.) Though Riggi could have requested such a notice sooner, that she chose to continue the administrative process does not raise a fair inference of vexatious conduct that itself is likely irrelevant under binding Second Circuit case law outlining the standards for abstaining under *Colorado River*.

### IV.    Conclusion

For the foregoing reasons, Defendants' motions to stay or dismiss are DENIED.

Defendants shall file answers to the complaint within fourteen days of the publication of this Opinion and Order.

The parties are directed to confer and file an amended case management plan within fourteen days of the publication of this Opinion and Order.

The Clerk of Court is directed to close the motions at ECF Nos. 9 and 16.

SO ORDERED.

Dated:  April 9, 2025
       New York, New York

_____
             J. PAUL OETKEN
        United States District Judge